UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| TRINITY INDUSTRIES LEASING COMPANY,         ) | |
|     *Plaintiff*,                                                    ) | |
|                                                                              ) | |
|     *vs.*                                                              ) | 1:11-cv-01579-JMS-TAB |
|                                                                              ) | |
| MIDWEST GAS STORAGE, INC., PUTNAM EN-        ) | |
| ERGY LLC, TERRENCE O'MALLEY, and DEB-    ) | |
| ORAH J. O'MALLEY,                                                       ) | |
|     *Defendants*.                                             ) | |

## ORDER

Presently before the Court in this action are: (1) an Amended Motion for Transfer, or in the Alternative 12(b)(6) Motion to Dismiss for Failure to State a Claim filed by Defendants Midwest Gas Storage, Inc. ("Midwest"), Putnam Energy LLC ("Putnam"), Terrence O'Malley, and Deborah J. O'Malley, [dkt. 33]; and (2) a Motion to Strike Defendants' Reply in Support of Their Amended Motion for Transfer, or in the Alternative, 12(b)(6) Motion to Dismiss, filed by Plaintiff Trinity Industries Leasing Company ("Trinity"), [dkt. 66]. For the following reasons, the Court determines that it is appropriate to transfer this action to the Northern District of Illinois. Accordingly, it will not address the merits of Defendants' arguments that Trinity's claims against it should be dismissed.

## I.
### BACKGROUND

Trinity is a Delaware corporation with its principal place of business in Texas. [Dkt. 1 at 1, ¶ 1.] Trinity "is in the business of leasing railcars to meet the freight railcar needs of [the] industry." [*Id.* at 3, ¶ 9.] Midwest is an Indiana corporation with its principal place of business in Illinois. [*Id.* at 1, ¶ 2.] Putnam is a limited liability company organized under the laws of the State of Indiana. [*Id.* at 1, ¶ 3.] Trinity alleges that Ms. O'Malley, a citizen of Illinois, owns

85% or more of Putnam, and that the remaining members of Putnam are citizens of either Illinois or California. [*Id.*] Trinity alleges further that Mr. O'Malley, also a citizen of Illinois, is the chief executive officer of Putnam and "controls the business," [*id.*], and also "controlled as president and chief executive officer" a company called Indiana Corn Products, LLC ("Indiana Corn"), [*id.* at 3, ¶ 9].

Trinity alleges that in March 2006, Mr. O'Malley committed Indiana Corn to lease 365 new railcars from Trinity for a term of ten years, and that Trinity agreed to the lease based upon false information provided by Mr. O'Malley regarding Indiana Corn's financial condition. [*Id.* at 3-4, ¶ 12; dkt. 54 at 7-8.] In sum, Trinity claims that Indiana Corn subleased the railcars to ConAgra Trade Group, Inc. ("ConAgra") and, instead of paying the funds received from ConAgra to Trinity, Mr. O'Malley used the money to "capitalize" Midwest and Putnam and to develop other business interests. [Dkts. 1 at 8, ¶ 27; 54 at 8.] Trinity also claims that Mr. O'Malley "intermingled the assets and intertwined his personal assets with the businesses of Indiana Corn,…[Midwest], and Putnam to such a degree that their separate corporate personalities ceased to exist." [Dkt. 54 at 8-9.]

Trinity eventually sued Indiana Corn in Texas State Court, and obtained a default judgment of $9,713,921.22. [*Id.* at 9.] Trinity has now sued Midwest, Putnam, and the O'Malleys in this Court, seeking to impose an equitable constructive trust on and attach certain leasehold estates, reservoirs, pipelines, royalty interests, and transportation and disposal revenues located in this district and to hold Defendants liable for the default judgment against Indiana Corn. [*Id.* at 10.] Specifically, Trinity asserts claims for: (1) equitable trust, [dkt. 1 at 16, ¶¶ 50-52]; (2) fraudulent transfer, [*id.* at 17-19, ¶¶ 53-60]; (3) tortious interference with contractual relation-

ships, [*id.* at 19-20, ¶¶ 61-67]; (4) fraud, [*id.* at 20-21, ¶¶ 68-72]; (5) unjust enrichment, [*id.* at 22, ¶¶ 73-74]; and (6) alter ego/piercing the corporate veil, [*id.* at 22-23, ¶¶ 75-79].

With the exception of this ruling, this Court has not yet issued any substantive orders.

## II.
### STANDARD OF REVIEW FOR MOTION TO TRANSFER

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." The Court typically considers four factors in deciding whether to transfer an action: (1) the convenience of the parties; (2) the convenience of the witnesses; (3) the situs of material events and access to proof; and (4) the interest of justice. *No Baloney Mktg., LLC v. Ryan*, 2010 U.S. Dist. LEXIS 30296, *26-35 (S.D. Ind. 2010). Federal district courts have the inherent power to administer their dockets so as to conserve scarce judicial resources. *Trippe Mfg. Co. v. Am. Power Conversion Corp.*, 46 F.3d 624, 629 (7th Cir. 1995).

The Court will apply the law of the Seventh Circuit regarding transfer of venue. *See In re Link_A_Media Devices Corp.*, 662 F.3d 1221, 1222-23 (Fed. Cir. 2011) ("In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), we apply the law of the regional circuit…." (citation omitted)). And in the Seventh Circuit, "[t]he interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Research Automation, Inc. v. Schrader-Bridgeport*

*Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (*citing Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986)).[1]

### III.
#### DISCUSSION

In support of its Motion to Transfer, Defendants argue that: (1) this action could have been brought in the Northern District of Illinois; (2) Trinity's choice of forum should be given little weight because Trinity is a citizen of Texas and has its principal place of business there; (3) Defendants and all of their records are located in Illinois; (4) the material events underlying the litigation occurred in Illinois, not Indiana; (5) this Court does not have an interest in this case, because it involves the conduct of Illinois residents in Illinois; and (6) Illinois law will govern at least some of Trinity's claims and, in any event, Indiana law will not apply to any of the claims. [Dkt. 37 at 6-8.]

Trinity responds to the Motion to Transfer by arguing that: (1) its choice of forum is entitled to considerable deference; (2) the situs of material events is Indiana because the real property interests upon which Trinity seeks to impose a constructive trust are all located in this district; (3) the location of documents and records should be given little weight and, in any event, relevant documents are located in Indiana, Illinois, and Texas; (4) the short distance between this Court and the Northern District of Illinois warrants against transfer, and Defendants have not

---

[1] Applying the law of the Fifth Circuit, the Federal Circuit called "dicta" *Coffey*'s "strong statement" about the independent considerations of judicial economy. *In re Vistaprint Ltd.*, 628 F.3d 1342, 1345 (Fed. Cir. 2010). To the extent that *Research Automation*'s reaffirmation of *Coffey*'s dicta might also be characterized as dicta – a question not considered in *In re Vistaprint* – the Court notes that the Seventh Circuit has cautioned lower courts to avoid "treat[ing] lightly" dicta "until disavowed," *Hendricks County Rural Electric Membership Corp. v. NLRB*, 627 F.2d 766, 768 n.1 (7th Cir. 1980). Given the Seventh Circuit's strong concerns about judicial economy, *see, e.g., Neal v. Honeywell Inc.*, 191 F.3d 827, 830 (7th Cir. 1999) (reviving, for reasons of judicial economy, an ultimately meritorious argument made below but not raised on appeal because "[s]ometimes the judiciary must act in self-defense"), the Seventh Circuit does not appear likely to disavow *Coffey* / *Research Automation* anytime soon. This Court will act accordingly.

presented any evidence that they cannot bear the expense of litigating here; (5) the convenience of the witnesses weighs against transfer because Defendants have not identified any non-party witnesses who would be unduly burdened by litigating here, and Trinity has identified numerous potential witnesses who it contends are located in Indiana and would be inconvenienced by a transfer; and (6) there are four judicial vacancies in the Northern District of Illinois and an "exceptional number of filings in that district." [Dkt. 54 at 12-16.][2]

**A. Interest of Justice**

Given its potentially dispositive nature, the Court will begin with a discussion of the interest of justice, before considering the relative convenience of the parties and the witnesses of the two venues. As a separate element of the transfer analysis, the interest of justice considers "the efficient administration of the court system." *Research Automation, Inc.*, 626 F.3d at 978 (citation omitted). Typically, courts evaluating this element "look to factors including docket congestion and likely speed to trial in the transferor and potential transferee forums; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." *Id.* (citation omitted).

The docket congestion factor weighs heavily in favor of transfer to the Northern District of Illinois. While it is true, as Trinity points out, that there are a significantly greater number of cases pending in the Northern District of Illinois than in this district (7,916 civil cases there as of

---

[2] Trinity focuses heavily on Defendants' contacts with Indiana, including discussing that Mr. O'Malley inspects Putnam's wells in Indiana frequently, that Putnam has a long-time attorney who practices in Indiana, and that Midwest has participated in litigation in Indiana. [Dkt. 54 at 5-7.] While these facts may be relevant to an analysis of whether the Court has personal jurisdiction over Defendants (which Defendants have not disputed), they are not relevant to the Court's transfer analysis.

September 30, 2011 versus 1,847 here),[3] Trinity fails to recognize that there are currently 31 district court judges in the Northern District of Illinois, and only five here.[4] Consequently, each judge in the Northern District of Illinois handles an average of 255 civil cases, while each judge in this district handles a much larger number – 369 on average. This significant difference in case load weighs in favor of transfer.

The speed-to-trial factor also weighs slightly in favor of transfer to the Northern District of Illinois. According to the most recent figures from the Administrative Office of the United States Courts, civil actions in the Northern District of Illinois had to wait 27.1 months from filing to trial, while the median in this district was 31 months.[5]

As for each district's familiarity with governing law, that consideration favors transfer to the Northern District of Illinois. Trinity asserts exclusively state law claims, and argues that Texas law applies. [Dkt. 55 at 3-4.] Defendants argue that to the extent Trinity states legally cognizable claims, Illinois law applies to some of Trinity's claims, [*see, e.g.*, dkt. 37 at 9], and Delaware law applies to one claim, [*id.* at 18], but agrees that Texas law may apply to others, [*see, e.g.*, *id.* at 12-13]. Significantly, however, neither Trinity nor Defendants argues that Indiana law applies to any of the claims. Because Illinois law may apply to some of the claims, and because neither party has asserted that Indiana law will apply, this factor weighs in favor of transfer to the Northern District of Illinois. *See, e.g., Coffey*, 796 F.2d at 221 ("In a diversity ac-

---

[3] http://www.uscourts.gov/uscourts/Statistics/Judicial Business/2011/appendices/C05Sep11.pdf (last accessed January 15, 2013).

[4] The Northern District of Illinois actually lists 33 district court judges, but the United States Courts website, http://www.uscourts.gov, lists two of those judges as senior status. For purposes of this analysis, the Court has excluded those two senior judges in the Northern District of Illinois, as well as a sixth judge in this district who is senior.

[5] http://www.uscourts.gov/uscourts/Statistics/Judicial Business/2011/appendices/C05Sep11.pdf (last accessed January 15, 2013).

tion it is also considered advantageous to have federal judges try a case who are familiar with the applicable state law." (citation omitted)).

Finally, "the respective desirability of resolving controversies in each locale," *Research Automation*, 626 F.3d at 978, and the relationship that the community of each venue has to the controversy, both weigh toward transfer. As discussed more fully below, Indiana's only relationship to this litigation appears to be that Indiana Corn – which is no longer a functioning entity – was located here and the property that is the subject of the constructive trust Trinity seeks is located here. But the more significant relationship is to Illinois, where the alleged fraudulent acts occurred (and, presumably, where additional assets of Defendants may lie since they are all located there).[6] Illinois has a strong interest in regulating companies headquartered there, and ensuring that they comply with applicable laws. In this case, Indiana has no such interest and its only interest would be in regulating the imposition of constructive trusts over property located here – in the Court's view, a much weaker interest than Illinois has in regulating its companies.

Given the fact that the docket in the Northern District of Illinois is significantly less congested than the docket in the district, the likelihood that this action will be resolved sooner in the Northern District of Illinois, the fact that Illinois law may apply to some of Trinity's claims and Indiana law undisputedly will not, and Illinois' strong connection to this litigation versus Indiana's weak one, the Court finds that the interest of justice strongly supports a transfer to the Northern District of Illinois. While these factors alone are enough to warrant transfer, the Court will discuss the additional transfer factors below.

---

[6] Defendants argue that, "[b]ecause Defendants lived and worked in Illinois," the actions Trinity alleges they took (establishing and maintaining an undercapitalized entity, engaging in fraudulent transfers, and misrepresenting Indiana Corn's financial condition to Trinity), "necessarily occurred in Illinois." [Dkt. 37 at 7.] Trinity does not address that argument, but focuses instead on the location of the property that was "developed and improved" via the fraudulent transfers, and that is the subject of the constructive trust it requests. [Dkt. 54 at 13.]

### B. Convenience of the Parties and Witnesses

The second branch of the transfer analysis considers the "convenience of parties and witnesses." 28 U.S.C. § 1404(a). Factors relevant to this "convenience" inquiry include: "(1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of the witnesses; and (5) the convenience to the parties of litigating in the respective forums." *CMG Worldwide, Inc. v. Bradford Licensing Assocs.*, 2006 U.S. Dist. LEXIS 98674, *10-11 (S.D. Ind. 2006) (citation omitted).

Trinity's choice of forum, Indiana, is given less deference because it is not Trinity's home state. *Gullone v. Bayer Corp. (In re Factor VIII or IX Concentrate Blood Products)*, 484 F.3d 951, 956 (7th Cir. 2007) ("if the plaintiff is suing far from home, it is less reasonable to assume that the forum is a convenient one and therefore 'the presumption in the plaintiff's favor 'applies with less force….'") (citation omitted). Additionally, the operative facts do not have a strong connection with the chosen forum such that Trinity's choice of Indiana should be given significant weight. *See MPH Techs. Oy v. Zyxel Communs. Corp.*, 2010 U.S. Dist. LEXIS 72893, *5 (N.D. Ill. 2010) ("[W]here the plaintiff's choice of forum has a relatively weak connection with the operative facts giving rise to the claim, the deference traditionally given to that selection is lessened"). Here, the only connection with Indiana that Trinity makes is that the alleged fraudulent transfers were used to develop and improve properties located here, and that Trinity seeks a constructive trust on those properties. [Dkt. 54 at 13.] This connection is weak when viewed in light of the fact that the actual alleged fraudulent acts (misrepresentations and fraudulent transfers) were facilitated from and took place in Illinois. The Court gives little deference to Trinity's choice of Indiana as its forum since it is not Trinity's home state, and because the operative facts here have a weak connection to Indiana.

The situs-of-material-events factor also weighs in favor of transferring this case. The only argument Trinity makes regarding this factor is that it "seeks to impose a constructive trust over real property interests that are all located in the Southern District of Indiana." [Dkt. 54 at 13.] But the lone case Trinity cites to support its proposition that "[t]he location of the property at issue must be considered when determining whether to transfer a case," [*id.*], involved the purchase of scrap metal where the court transferred the case to the state where the actual scrap metal at issue was located. *Omnisource Corp. v. Sims Bros., Inc.*, 2008 U.S. Dist. LEXIS 53993, *16 (N.D. Ind. 2008) (transfer appropriate where disputed property, which plaintiff sought return of, was located in transferee forum). Here, Trinity seeks a constructive trust on property located in Indiana to compensate for events – including alleged misrepresentations and fraudulent transfers – which took place in Illinois. Trinity has not cited any case law standing for the proposition that when a constructive trust is sought, a case must be brought where the property that is the subject of the constructive trust is located. And the Court finds in any event that the connection between the material events and Illinois is more important than the fact that property which is the subject of part of the remedy Trinity seeks happens to be located in Indiana.

The third factor, ease of access to sources of proof, is neutral. Defendants argue that all of their records are in Illinois, [dkt. 37 at 7], but Trinity argues that records exist in Texas, Indiana, and Illinois, [dkt. 54 at 13-14]. Additionally, given advances in modern technology relating to the exchange of documents and information, the location of relevant documents does not carry as much weight in the transfer analysis.

As for the convenience of witnesses, this factor weighs in favor of transfer. Trinity's witnesses from Texas will not be more inconvenienced by having to travel to Illinois than they would be with having to travel to Indiana. Defendants argue that they and all of their witnesses

are located in Illinois, making litigating there more convenient. Trinity is correct that Defendants do not specifically identify witnesses who would be inconvenienced other than their executives. But, while Trinity provides a list of over three hundred "potential witnesses" who "are located in Indiana and who would at least be inconvenienced by a transfer," [dkts. 54 at 15; 59-1], it does not explain what knowledge they have that is relevant to the litigation.[7] The list includes the individual's name, position, and connection to Defendants (*e.g.*, "[p]repared plans for 12" Gas Pipeline Project" or "[p]arty to suit involving [Midwest]," [dkt. 59-1 at 2-3]) but does not specify why that knowledge might be relevant to this litigation. For example, the list includes the Indianapolis law firm Baker & Daniels LLP and states that the firm is an Indiana Corn "vendor," but does not explain what information Baker & Daniels LLP may have that is relevant to this litigation. [*Id.* at 2.] Indeed, Defendants argue that Trinity has included "every company that [has] ever provided any type of product or service to Indiana Corn" – which Trinity obtained during discovery – including, for example, American Heritage Lawns, [dkt. 59-1 at 1], which performed landscaping work at Indiana Corn's Indiana offices. [Dkt. 65 at 7.] Trinity has not explained, and the Court does not see, how a landscaper for Indiana Corn would have any

---

[7] Trinity cites to excerpts from Mr. O'Malley's deposition in which he acknowledges that the people who worked on the Indiana properties for which Trinity seeks a constructive trust would "know whether they were performing work for the benefit of Indiana Corn or [Midwest] or [Putnam]," [dkt. 54 at 7], but it appears to the Court that this knowledge would relate to which entity owns the properties and not to the alleged fraudulent transfers at issue. Again, Trinity does not provide the missing link of why those individuals have knowledge relevant to this case. Further, Trinity's assertion that Mr. O'Malley "agrees that many of these potential witnesses are located in Indiana," [*id.*], is misleading. Mr. O'Malley simply testified that "a large number of those entities, people, vendors, persons, are going to be located in Indiana," [dkt. 74-2 at 92], not that they are potential witnesses.

knowledge relevant to this action. Without more detail regarding how these potential witnesses fit into this lawsuit, the Court cannot give their location in Indiana much weight.[8]

The final factor – convenience to the parties – weighs in favor of transfer. Trinity would be equally inconvenienced by litigating this case in Illinois as it would be by litigating here.[9] Conversely, Defendants are located in Illinois, making litigating this case in the Northern District of Illinois more convenient for them.[10]

In summary, the interest of justice factors alone warrant transfer of this case to the Northern District of Illinois – most particularly, the lower docket congestion in Illinois and the fact that Illinois law may apply to some of Trinity's claims, while none of the parties argue that Indiana law will apply. The additional factors the Court has considered also point toward the appropriateness of transfer. The Court gives little deference to Trinity's choice of forum due to the fact that Indiana is not its home state and that Indiana has a weak connection with the operative

---

[8] Trinity also argues that, because of the close proximity between this district and the Northern District of Illinois, Defendants are not inconvenienced by having to travel here. But that argument cuts both ways and, to the extent some witnesses are located in Indiana, traveling to Illinois will not be prohibitively inconvenient. Further, to the extent the attendance of non-party witnesses from Indiana cannot be compelled, their testimony could be presented by video or deposition.

[9] Trinity asserts that transfer is inappropriate where it would "merely shift the inconvenience from the defendant to the plaintiff." [Dkt. 54 at 14.] However, Trinity does not explain why litigating this case in Indiana, rather than in Illinois, would be more convenient for a Texas company. Additionally, one of the Trinity executives who had at least some of the conversations with Mr. O'Malley that are the subject of this litigation actually resides in Illinois, making litigating there more convenient for him. [Dkts. 1 at 3, ¶¶ 10-11; 65-2 at 4.]

[10] Trinity argues that Defendants "did not present any evidence that they cannot bear the expense of litigation in the Southern District of Indiana." [Dkt. 54 at 14.] However, Trinity has not pointed to any authority, and the Court is not aware of any, requiring that Defendants make such a showing.

facts. And considerations of convenience to the witnesses and the parties, as well as the other convenience factors, are either neutral or weigh in favor of transfer.[11]

### IV. MOTION TO STRIKE

The bulk of Trinity's Motion to Strike relates to arguments Defendants made in their reply in support of the Motion to Dismiss, however Trinity does seek to strike five arguments Defendants made in support of the Motion to Transfer:

- That certain outside professionals for Indiana Corn, Midwest, and Putnam that are likely to have knowledge related to this case are located in Illinois, outside of this Court's subpoena power, [dkt. 72 at 9];

- That the Trinity executive who allegedly participated in some of the allegedly fraudulent conversations with Mr. O'Malley, Mike Meaney, lives in Illinois, [*id.*];

- That, except for one individual and one company, all of the relevant non-parties fall outside of this Court's subpoena power, [*id.*];

- That the Brazil, Indiana office of Midwest and Putnam is simply a place to receive mail and a field house for independent contractors to use, and the principal place of business for those companies is in Illinois, [*id.*]; and

- That Midwest has not always had a choice about where to litigate past cases, [*id.*].

Defendants respond that none of these arguments is new. [Dkt. 70 at 6.]

While it is true that new arguments cannot be raised in a reply brief, a party can "counter…arguments raised in [a] response brief." *Sanfratello v. Howell Tractor & Equip., LLC*, 2011 U.S. Dist. LEXIS 79056, *21-22 (N.D. Ind. 2011). The Court finds that each of the arguments relating to the Motion to Transfer that Trinity seeks to strike addressed arguments made by Trinity in opposition to the motion. Specifically: (1) arguments regarding the location of outside pro-

---

[11] As required for transfer under 28 U.S.C. § 1404(a), the Court also finds that this matter could have originally been brought in the Northern District of Illinois since that court clearly has personal jurisdiction over Midwest, Putnam, and the O'Malleys as citizens of Illinois. [Dkt. 1 at 1-2, ¶¶ 2-5.]

fessionals respond directly to Trinity's argument that "non-party witnesses including documents retained by Indiana Corn's, [Midwest's] and [Putnam's] lawyers are located in Indiana," [dkt. 54 at 14]; (2) arguments relating to Mike Meaney's residence respond generally to Trinity's argument that the convenience of the parties factor weighs against transfer, [*id.* at 14-15]; (3) arguments relating to the location of non-parties and that they may fall outside the Court's subpoena power respond directly to Trinity's claim that numerous non-party witnesses are located in Indiana and that Defendants did not identify any non-party witnesses "who will not appear at trial in the Southern District of Indiana," [*id.* at 15]; (4) arguments regarding the nature of the Brazil, Indiana office respond directly to Trinity's statement that Midwest's "offices are registered with the EPA as being located at 1 North Road, Brazil, Indiana," [*id.* at 2]; and (5) arguments relating to other litigation in Indiana involving Midwest respond directly to Trinity's argument that "[Midwest] has initiated no less than eight lawsuits in the Southern District of Indiana and it has defended at least one additional lawsuit[;] At no time during any of that litigation did [Midwest] complain that the Southern District of Indiana was an inconvenient venue," [*id.* at 1-2].

Because Defendants' arguments in their reply in support of the Motion to Transfer were made to counter arguments Trinity raised in opposition to the motion, the Motion to Strike those arguments is denied.[12]

---

[12] The Court notes that it is misleading for Trinity to seek to strike Exhibits A and B to Defendants' reply and argue that they constitute "new evidence." [Dkt. 67 at 1.] Exhibits A and B are transcripts of depositions that took place *after* Defendants filed the Motion to Transfer, and thus could not have been submitted initially. The Court is also concerned with Trinity's request to strike Exhibit C to Defendants' reply (documents from another case involving Midwest), since Trinity itself attached those very same documents to its response to the Motion to Strike [*cf.* dkt. 65-3 at 2-25 with dkt. 74-2 at 104-127].

# V.
## CONCLUSION

Transferring this action to Illinois would strongly promote the interest of justice. Under the circumstances, transfer is "clearly" proper, *Coffey*, 796 F.2d at 220 (citation omitted). The Court will, therefore, **GRANT** the portion of Defendants' motion at issue, [dkt. 33], that requests transfer of this action to the Northern District of Illinois, and **DENY WITHOUT PREJUDICE TO REFILE AS A SEPARATE MOTION IN THE TRANSFEREE COURT** the portion of that motion that requests dismissal pursuant to Fed. R. Civ. P. 12(b)(6). Because Defendants did not improperly raise new arguments in their reply in support of the Motion to Transfer, the Court **DENIES** Trinity's Motion to Strike Defendants' Reply in Support of Their Amended Motion for Transfer, or in the Alternative, 12(b)(6) Motion to Dismiss, [dkt. 66], to the extent it relates to the Motion to Strike. To the extent it relates to the Motion to Dismiss, the Court **DENIES AS MOOT** that portion of the motion. The Clerk is directed to **TRANSFER** this action to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Any previously ordered dates and deadlines are **VACATED** and any pending motions not addressed above are **TERMINATED**.

01/18/2013

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only:**

Timothy D. Elliott
RATHJE & WOODWARD LLC
telliott@rathjewoodward.com

Gary G. Hanner
HANNER HANNER & HANNER
ghanner@hannerlaw.com

Offer Korin
KATZ & KORIN P.C.
okorin@katzkorin.com

Dorothea L. Vidal
GEARY PORTER & DONOVAN P.C.
dvidal@gpd.com

Kaitlyn Anne Wild
RATHJE & WOODWARD, LLC
kwild@rathjewoodward.com